Darrin A. DOUGHERTY, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Submitted Sept. 20, 1996.
Decided Dec. 3, 1996.

Edward C. Harkin, Collingdale, for petitioner.

Judith M. Gilroy, Assistant Counsel, and Clifford F. Blaze, Deputy Chief Counsel, Harrisburg, for respondent.

Before McGINLEY and FRIEDMAN, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Darrin A. Dougherty (Claimant) appeals from the order of the Unemployment Compensation Board of Review (UCBR) that affirmed the referee's denial of benefits to Claimant under Section 402(e) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e). We affirm.

Claimant worked for Fair Acres Geriatric Care Center (Employer) for approximately

five and one-half months as a certified nursing assistant, working with eight geriatric patients. On October 26, 1995, Claimant was reassigned to a unit which included three patients with Acquired Immunodeficiency Syndrome (AIDS). Claimant would later testify that he was neither told by the head nurse of the unit that certain patients had AIDS nor to use any additional precautions in the care of these patients. Claimant also testified that he had never been specifically instructed in the care of AIDS patients and had only received "Universal Precautions" training.[1] Claimant asserts that Employer failed to provide any additional precautions other than rubber gloves for the treatment of these patients and that none of the other certified nursing assistants wore them. Claimant told Employer that he would not work with the AIDS patients because he feared getting the virus and transmitting it to his children. Employer discharged Claimant for refusing to accept the work assignment with AIDS patients. Claimant filed for benefits which the Job Center denied.

Following a hearing at which time both parties testified, the referee held that the Employer had met its burden of proving that Claimant's refusal to follow its reasonable directive was willful misconduct. The UCBR affirmed stating that "[E]ployer's demand was not unreasonable and [C]laimant has not demonstrated that his actions were justified." (UCBR opinion at 2).

On appeal to this Court,[2] Claimant solely argues that the UCBR erred as a matter of law in holding that his actions were disqualifying willful misconduct under Section 402(e) of the Law.[3]

Willful misconduct has been described as: 1) the wanton and willful disregard of employer's interest; 2) the deliberate violation of rules; 3) the disregard of standards of behavior which an employer can rightfully expect from its employees; or 4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interest or the employee's duties and obligations. *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review*, 10 Pa.Cmwlth. 90, 309 A.2d 165 (1973). Where an employee is discharged for refusing or failing to follow an employer's directive, both the reasonableness of the demand and the reasonableness of the employee's refusal must be examined. However, this Court has typically required "extraordinary circumstances" to justify a claimant's refusal to comply with a reasonable employer directive. *Gwynedd Square Center v. Unemployment Compensation Board of Review*, 656 A.2d 562 (Pa.Cmwlth.1995).

Because an employer has the right to make reasonable changes in an employee's duties, *Tucker v. Unemployment Compensation Board of Review*, 14 Pa.Cmwlth. 262, 319 A.2d 195 (1974), only when an employee's refusal to employ such directive directly threatens that person's health or safety will we refuse to hold that the employee's actions were willful misconduct. *McLean v. Unemployment Compensation Board of Review*, 476 Pa. 617, 383 A.2d 533 (1978).

Claimant first contends that he had good cause to refuse Employer's directive because he believed working with AIDS patients threatened his health and welfare. However, Claimant does not contend that it was unreasonable for a long-term health care facility to assign its employees to work with AIDS patients.

Claimant also asserts that his actions in refusing to care for the AIDS patients was not willful misconduct because Employer had neither given him the proper training nor the proper equipment for working with AIDS patients. We do not agree.

Claimant did not offer any evidence of what training he believed he was lacking.

---

1. Universal Precautions training includes a section on the care of AIDS patients.

2. Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. 2 Pa.C.S. § 704.

3. The UCBR is the ultimate finder of fact, *Peak v. Unemployment Compensation Board of Review*, 509 Pa. 267, 501 A.2d 1383 (1985), and if the UCBR's findings are supported by substantial evidence, we may not alter them.

Claimant did receive Universal Precautions training but did not specify what type of information Employer omitted in that training which was necessary to protect his health while working with AIDS patients. In fact, Claimant's training included information about the cause and prevention of AIDS. The Universal Precautions training also included instruction on how to prevent the transmission of disease, including the routine use of gloves, proper hand washing, the use of further protective equipment for certain procedures, methods of handling needles, and how to dispose of infectious waste and handling soiled laundry.

Claimant contends that he was never offered protective eye wear, gowns or aprons and that his fellow certified nursing assistants never used such precautions other than rubber gloves. Claimant admitted that he was not concerned about the issue during his work with the geriatric patients while the Universal Precautions taught these precautions should be used when caring for *all* residents as a health care worker could not know for sure that any patient did not have AIDS.[4]

However, Claimant failed to introduce evidence that he was performing job duties that required precautions other than the use of rubber gloves. Employer's policy concerning Universal Precaution which require masks, protective eye wear, and cover gowns states:

B. *Mask and Protective Eye Wear.*— Must be worn during procedures that are likely to generate droplets of blood or other body fluids to prevent exposure of mucus membranes of the mouth, nose and eyes.

Example: suctioning a tracheostomy or being in *prolonged* close contact (within three feet) of a person who is coughing and does not cover the mouth.

C. *Cover Gowns or Aprons.*—Must be worn during procedures that are likely to result in splashes of blood or body fluids to the clothing.

(14a.)

While Claimant came in contact with bodily fluids during his daily routine, he did not testify that he was involved in procedures likely to result in generating droplets of body fluids or splashes of body fluids such as suctioning a tracheostomy or attending surgery.

██ Our careful review of the record reveals solely that Claimant, despite his training, harbored unnecessary fears and misconceptions concerning AIDS. Claimant has only demonstrated to this Court that he had *subjective* beliefs that these patients posed a special risk to him and that Employer had inadequately equipped him to deal with those risks. A subjective belief alone does not constitute good cause for actions that would otherwise disqualify a claimant from benefits. *Ayres v. Unemployment Compensation Board of Review,* 143 Pa. Cmwlth. 310, 598 A.2d 1083 (1991). Therefore, we hold that the UCBR did not err in finding that Claimant's actions were willful misconduct.

Accordingly, we affirm.

### ORDER

AND NOW, this 3rd day of December, 1996, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby affirmed.

FRIEDMAN, Judge, dissenting.

Because I do not believe that Darrin A. Dougherty's (Claimant) refusal to work with AIDS patients under the circumstances here amounts to disqualifying willful misconduct, I respectfully dissent.

The majority correctly notes that where an employee is discharged for refusing to follow an employer's directive, we must examine *both* the reasonableness of the demand and the reasonableness of the employee's refusal. However, the majority, without ever addressing the reasonableness of Employer's demand in this case, bases its determination on Claimant's failure to establish good cause for his refusal to follow Employer's *reasonable* directive to work with AIDS patients. Like Claimant, I do not believe that it is unreason-

---

4. Claimant never raised the concern that gloves were inadequate to protect him and his children against other infections which may well be easier to transmit than AIDS, which can only be transmitted through an actual exchange of bodily fluids.

able for a long-term health care facility to assign its employees to work with AIDS patients *as long as those employees are provided with proper training and equipment for the job.* Thus, *if* Employer had provided Claimant with the necessary protective gear for such work,[1] I would agree with the majority that Claimant's refusal to perform his job assignment would be based on unnecessary fears and misconceptions concerning AIDS, so as to disqualify Claimant from receiving benefits. However, where, as here, Employer demanded that Claimant perform his new assignment with only rubber gloves for protection, I cannot agree that Employer satisfied its burden to prove that its directive was, in fact, reasonable, or that Claimant's refusal to work under those conditions constituted willful misconduct. Accordingly, I would reverse.

---

1. In this regard, I note that, although the majority concedes that Claimant came in contact with bodily fluids during his daily routine, (majority op. at 6), the majority nonetheless concludes that Claimant did not establish that his job duties were the type that required precautions other than the use of rubber gloves. (Majority op. at 5.) In reaching this conclusion, the majority relies on the fact that Claimant did not testify that he was involved in procedures such as tracheostomies or surgery and, in so doing, ignores Employer's own policy concerning Universal Precaution. That policy does not limit use of additional precautions to situations where health care workers are involved in a tracheostomy or surgery, but, rather, requires masks, protective eye wear and cover gowns where, as here, an employee is exposed to body fluids, by stating:

B. *Mask and Protective Eye Wear*—must be worn during procedures that are likely to generate droplets of blood or other body fluids to prevent exposure of mucous membranes of the mouth, nose and eyes.
Example: Suctioning a tracheostomy or *being in prolonged close contact (within 3 feet) of a person who is coughing and does not cover the mouth.*
C. *Cover Gowns or Aprons*—must be worn during *procedures that are likely to result in splashes of* blood or *body fluids to the clothing.*
(R.R. at 14a, emphasis added.)