IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Wendell C. Johnson Jr., | : | |
| Petitioner | : | |
| | : | No. 219 C.D. 2015 |
| v. | : | |
| | : | Submitted: August 21, 2015 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                    FILED: November 16, 2015


Wendell C. Johnson (Claimant) petitions for review of the January 27, 2015 order of the Unemployment Compensation Board of Review (Board), which affirmed a referee's decision and held that Claimant was ineligible for benefits under section 402(e) of the Unemployment Compensation Law (Law).[1]

Claimant worked for Mid-Atlantic d/b/a American Building Maintenance (Employer) from April 5, 2005, to July 13, 2014, as a housekeeper at the Freight House Shops at Station Square. Employer terminated Claimant's

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any week in which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work.

employment following an incident on July 13, 2014. The local service center determined that Claimant was ineligible for benefits. Claimant appealed, and a referee conducted a hearing at which both Claimant and Employer participated.

Ron Black (Black), Employer's district manager, testified that he discharged Claimant for failing to complete his assigned tasks. Black explained that Employer's client made ongoing requests to the housekeepers to perform specific tasks and that Claimant resisted those requests. Black said that he and Claimant had worked out an arrangement whereby the client would contact Claimant's supervisor, and the supervisor would relay the client's request to Claimant.

Black testified that Employer's client requested Claimant's removal from the housekeeping program, and he explained that Employer is required to remove an employee from the worksite upon the client's request.[2] Black testified that the client wanted Claimant taken off the job because Claimant could not complete assigned tasks, a problem that was previously raised by the client about two weeks prior to Claimant's separation. (Notes of Testimony (N.T.) at 5-7.)

Black stated that on Claimant's last day of work, Dorothy Olzak (Olzak), Claimant's supervisor, gave him special cleaning instructions. Black said that Claimant voiced concern about not being able to finish the tasks before the end of his shift and that he told Claimant via phone to finish as much of the work as possible before the shift ended. Black added that he and Claimant had spoken on prior occasions regarding the client's dissatisfaction with Claimant's work. (N.T. at 7-8.)

---

[2] An email from the client requesting Claimant's removal from the worksite was included in the documents Employer had previously submitted. (Employer's Separation Information, Record Item 3, No. 4). At the hearing, Claimant objected to the admission of the email into evidence on the ground that it was hearsay, but the referee admitted it into the record, stating that "[h]e can testify about what he did with it." (Notes of Testimony (N.T.) at 3.)

2

Black further testified that Claimant was a member of a bargaining unit and that Claimant subsequently was offered full-time employment at another union facility at the same rate of pay. Black said that, to his knowledge, Claimant did not accept that position, and Black did not know the reason for his decision. (N.T. at 5-6.)

Olzak confirmed that Black and Claimant had agreed that she would receive orders directly from the client and Claimant would take orders from her. Olzak stated that on Claimant's last day of work, she received an order for Claimant to clean the bathroom and glass on the second floor of the Freight House Shops. Olzak said that she gave these instructions to Claimant around 5:30 p.m., about an hour into his shift. Olzak testified that Claimant became very agitated and said that the orders came from two particular people and that he would not take orders from them. Olzak stated that Claimant was very upset and, because she could not calm him down, she called Black. Olzak also said that she expected Claimant to finish the work as directed during that shift, along with Claimant's other tasks; she stated that upon inspection, the glass was done and the bathrooms were both "okay." (N.T. at 9-12.)

The referee asked Olzak why the client wanted Claimant discharged, and she responded that she was not fully involved in management operations. Noting that the glass did get done, the referee asked Black the same question. According to Black, the client felt that it was too difficult to get things done by Claimant; the process was too cumbersome; there was too much resistance from Claimant; and the problem had occurred before. (N.T. at 12.)

Claimant acknowledged that cleaning the restrooms was part of his normal responsibilities as a housekeeper. He testified that on July 13, 2014, Olzak

3

asked him to clean the restrooms on the second floor of the Freight House Shops, but she did not ask him to clean the glass. Claimant stated that he did not clean the glass on the second floor but he partially cleaned the second floor bathrooms. Claimant said that Employer never threatened to discipline him for not completing the requested tasks and had never disciplined him in the past. Claimant also said that he never knowingly or willingly violated a company policy. Rather, Claimant testified that he completed the task to the best of his abilities given the time constraint. (N.T. at 14-18.)

Claimant explained that he was reluctant to follow the special instructions because he believed that the order came from a coworker, rather than the client. According to Claimant, the coworker was a close friend of one of the client's employees and the coworker sometimes would ask his friend to reassign his work to Claimant. Claimant testified that he did not like the arrangement between the two men but that he did what he was told. (N.T. at 18.)

Following the hearing, the referee resolved all conflicts in evidence in Employer's favor. In relevant part, the referee found that Claimant did not follow orders given by his supervisor on July 13, 2014, but instead became agitated and failed to complete his assigned work, and, thereafter, Employer's client requested his removal. The referee concluded that Employer discharged Claimant for willful misconduct rendering him ineligible for benefits under section 402(e) of the Law.

Claimant appealed to the Board, which affirmed the referee's decision. The Board specifically found that: Employer and Claimant had agreed that Claimant would follow orders given by his supervisor; on July 13, 2014, the supervisor told Claimant to clean glass and bathrooms on the second floor; Claimant became agitated and told the supervisor that he did not want to follow those orders; the district

4

manager told Claimant he had to do the work; Claimant did not complete the given tasks; the client asked Employer to remove Claimant from the worksite due to his behavior; and Employer had no other work available for Claimant at that time. (Board's Findings of Fact Nos. 1-11.)

The Board cited Claimant's admissions that he was given the instructions by his supervisor, refused to comply, was told to do the work by his district manager, and did not clean the glass or complete the bathrooms. The Board also noted that Claimant did not like taking orders from employees of the client. The Board concluded that, while Claimant disliked taking the orders, he did not have good cause to refuse a reasonable instruction from Employer, "especially after [Employer] arranged for the process due to the difficulty it was having with [Claimant] completing tasks as requested by the client." (Board's op. at 3.) Additionally, the Board rejected Claimant's testimony that he did not have sufficient time to complete his tasks as not credible, noting that Claimant received the instruction within one hour of the start of his shift.

Addressing Claimant's argument that the email the client sent to Employer was hearsay, the Board concluded that the email was relevant to Employer's state of mind concerning its decision to discharge Claimant. The Board also noted that Olzak, Black, and Claimant provided firsthand testimony regarding the events that led to the termination of his employment.

Accordingly, the Board concluded that Claimant's employment was terminated due to willful misconduct and held that he was ineligible for benefits under section 402(e) of the Law.

On appeal to this Court,[3] Claimant argues that the Board erred in determining that his work performance and behavior, specifically, his agitation in response to a cleaning directive, rose to the level of willful misconduct. Claimant also contends that the email from Employer's client was hearsay and that its admission into evidence was an error of law.

Employer counters that the Board's findings of fact are supported by the testimony of Employer's witnesses as well as Claimant, and, thus, are binding on the Court. Employer also asserts that Claimant's refusal to follow Employer's instructions and complete tasks that were within his job duties amounted to willful misconduct.

Although the Law does not define the term willful misconduct, our courts have defined it as including: (1) the wanton or willful disregard of the employer's interests; (2) the deliberate violation of the employer's rules or directives; (3) the disregard of the standards of behavior which an employer can rightfully expect from an employee; and (4) negligence demonstrating an intentional disregard of the employer's interest or the employee's duties and obligations to the employer. *Kelly v. Unemployment Compensation Board of Review*, 747 A.2d 436, 439 (Pa. Cmwlth. 2012). Whether or not an employee's actions amount to willful misconduct is a question of law subject to review by this Court. *Noland v. Unemployment Compensation Board of Review*, 425 A.2d 1203, 1205 (Pa. Cmwlth. 1981).

An employer bears the burden to establish that an employee was discharged for willful misconduct that renders him ineligible for unemployment

---

[3] Our scope of review is limited to determining whether constitutional rights have been violated, whether errors of law were committed, or whether findings of fact are supported by substantial evidence. *Procyson v. Unemployment Compensation Board of Review*, 4 A.3d 1124, 1127 n.4 (Pa. Cmwlth. 2010).

compensation. *Bignell v. Unemployment Compensation Board of Review*, 434 A.2d 869, 870 (Pa. Cmwlth. 1981). If the employer satisfies its initial burden, the burden then shifts to the employee to demonstrate good cause for his actions. *Lausch v. Unemployment Compensation Board of Review*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008). To prove good cause, a claimant must demonstrate that his actions were justifiable and reasonable under the circumstances. *Docherty v. Unemployment Compensation Board of Review*, 898 A.2d 1205, 1208-09 (Pa. Cmwlth. 2006).

An employee's refusal to comply with a directive or request of his employer may constitute willful misconduct under section 402(e) of the Law. *Dougherty v. Unemployment Compensation Board of Review,* 686 A.2d 53 (Pa. Cmwlth. 1996). Where the determination of willful misconduct is based on the claimant's refusal to follow the employer's directive, we evaluate both the reasonableness of the employer's request and the reason for the claimant's noncompliance. *Id.* at 54.

It is well settled that an employer has the right to make reasonable changes in an employee's duties. *Id.* However, if the claimant's conduct is justified under the circumstances, it is not considered willful misconduct. *Id.*

Here, the Board accepted Black and Olzak's testimony as credible and sufficient to establish that Claimant received instructions to perform tasks that fell within his job duties, became agitated by those orders, and did not follow them. Because the Board rejected Claimant's assertion that he did not have enough time to complete the work, Claimant failed to establish good cause for his conduct. Importantly, Claimant admitted that he did not finish the assigned tasks.

It is not this Court's role to reweigh evidence. *Allen v. Unemployment Compensation Board of Review*, 638 A.2d 448, 450 (Pa. Cmwlth. 1994). Instead, the

7

Board, as ultimate fact finder, has exclusive authority to determine witness credibility and evidentiary weight. *Tapco, Inc. v. Unemployment Compensation Board of Review*, 650 A.2d 1106, 1108 (Pa. Cmwlth. 1994). The Board's findings are conclusive on appeal where, as here, they are supported by substantial evidence. *Curran v. Unemployment Compensation Board of Review*, 752 A.2d 938, 940 (Pa. Cmwlth. 2000).

Claimant also argues that the client's email to Employer asking that Claimant be removed is hearsay and that its admission into evidence was an error of law. Hearsay is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c); *Stugart v. Unemployment Compensation Board of Review*, 85 A.3d 606, 608 (Pa. Cmwlth. 2014). It is well settled that hearsay evidence, properly objected to, is not competent evidence to support a finding of fact. *Stugart*, 85 A.3d at 608.

The Board responds that the email was admissible as evidence of Employer's state of mind in deciding to terminate Claimant's employment. However, the email included statements by the client concerning Claimant's conduct that plainly were hearsay. Nevertheless, we conclude that the admission of the email was harmless error. As the Board correctly noted, the circumstances underlying Employer's decision to discharge Claimant were established by the testimony of Olzak, Black, and Claimant himself. Upon review, we conclude that their testimony constitutes competent evidence, in itself, to support the Board's finding of willful misconduct; consequently any error in admitting the email was harmless. *See Muehlieb v. Philadelphia*, 574 A.2d 1208, 1218 (Pa. Cmwlth. 1990) (concluding that

8

evidence admitted erroneously amounted to harmless error where it was cumulative of other properly admitted evidence).

Accordingly, we affirm.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wendell C. Johnson Jr.,                    :
                Petitioner        :
                                      :    No. 219 C.D. 2015
            v.                          :
                                        :
Unemployment Compensation                  :
Board of Review,                           :
                Respondent        :

## ***ORDER***

AND NOW, this 16th day of November, 2015, the order of the Unemployment Compensation Board of Review, dated January 27, 2015, is affirmed.

 

_____
PATRICIA A. McCULLOUGH, Judge