IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Adams County,                                    :
                          Petitioner              :
                                                  :
            v.                                    :        No. 1647 C.D. 2024
                                                  :
Unemployment Compensation                         :        Submitted: March 3, 2026
Board of Review,                                  :
                          Respondent              :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE STELLA M. TSAI, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                              FILED: April 30, 2026


            Adams County (Employer) petitions for review of the November 5, 2024 order of the Unemployment Compensation Board of Review (Board) finding that Ronald Eversole (Claimant) was eligible for Unemployment Compensation (UC) benefits under Section 402(e) of the UC Law (Law) because he had good cause for violating Employer's policy against removing glass bottles before emptying trash cans.[1]  After careful review, we affirm.

---

[1] Section 402(e) of the Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).  Section 402(e) provides that "an employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work . . . ."  43 P.S. § 802(e).

## I. Facts and Procedural History

The facts are not in dispute. From June 15, 2016, to December 4, 2023, Claimant worked for Employer as a full-time nighttime custodial worker. One of Claimant's job duties was to empty trash cans.

On January 23, 2020, Claimant removed some glass bottles from the public trash and left them on the floor in front of the trash cans. On January 24, 2020, Claimant received a written reprimand from his supervisor that listed his performance issue as follows:

> January 23, 2020[,] you removed a bottle from the public trash can in the Security Department [of the Human Services Building] and left it on the floor in front of the trash can. I reviewed the video to see what occurred and found you removed the bag and got on the floor to go through the bag.
>
> During our safety trainings with Tony Samento he went over the way we should **never go through trash cans. We don't know what is in the cans, someone may have thrown up or spit in the can, there may be sharp objects, etc**.

(Reproduced Record (R.R.) at 185-86)[2] (emphasis added). The written reprimand identified the policy or practice being violated as "(as stated in County Handbook pg. 29.) Be aware of your own personal safety and the safety of others." *Id.* Under the heading "summary of corrective action to be taken," the memorandum stated: "Your job is to pull plastic bags from the trash bins and dispose of them. **You will not remove any items from the trash bins from this point forward.** If it's in the trash bin[,] you leave it there and dispose of it in the dumpster." *Id.* at 187 (emphasis

---

[2] The page numbers in the Reproduced Record are not followed by a small "a" as specified in Pa.R.A.P. 2173. The Court will refer to the page numbers as they appear in the Reproduced Record.

in original). Claimant signed the Corrective Action Memorandum acknowledging that the matter was discussed with him. *Id.* at 184.

Subsequently, Claimant took glass bottles out of the trash again. On March 22, 2022, Claimant received a Corrective Action Memorandum with a two-day suspension. This Corrective Action Memorandum reminded Claimant that he had been told on January 28, 2022, not to remove trash from bags or to go through trash bags. Claimant signed the Corrective Action Memorandum acknowledging that the matter was discussed with him.

On December 5, 2023, Claimant removed all the trash from a trash can in the District Attorney's Office except for a glass Starbucks Frappuccino bottle with a handwritten note stating, "Please No Glass in Trash." *Id.* at 25-27. On December 4, 2023, Employer terminated Claimant's employment for insubordination and failing to follow Employer's rules and policies.

On December 10, 2023, Claimant applied for UC benefits, and, on March 4, 2024, the Department of Labor & Industry's UC Service Center (UC Service Center) found Claimant ineligible for UC benefits under Section 402(e) of the Law. The UC Service Center determined that Claimant was discharged for insubordination because he failed to follow a reasonable directive given by his employer. The UC Service Center also found that Claimant did not provide good cause for his failure to follow the order. *Id.* at 30. On March 21, 2024, Claimant timely appealed the UC Service Center's determination.

On June 21, 2024, a Referee conducted a hearing at which Employer's Manager for Building and Maintenance, Becky Tracy, and its Director of Human Resources, Michelle Miller, testified regarding Employer's trash removal rule and the history of Claimant's violations of that rule. Claimant also appeared at the hearing with counsel and testified.

3

Claimant testified that his reason for removing items from trash cans was a concern for his safety and the safety of others. *Id.* at 164. He explained his safety concerns as follows:

> I'd say there would be a sharp object in a big trash can. We would usually take small trash cans and put them all in one big bag. By the end of the night or within a number of offices, there is a lot of weight in that trash bag. If there's a sharp object in that trash bag, it's going to poke a hole in the trash bag. By doing so, if there's any liquid in, that's going to come out. Also, that sharp object is going to be sticking out of the bag, so whether I would pick up the bag or if I would have to leave the shift and have my supervisor or another employee pick up the bag, they don't know that. They're just going to come up, pick up the bag, either cut them or get cut again at night when they're putting all the trash in the dumpster.

*Id.* at 24. He acknowledged that Employer provided him with gloves but believed that the gloves "were not proper for the type of environment" he was in and "not sufficient" to protect him from glass or needles or biohazards in the trash cans. *Id.* at 166, 168. He explained

> if I lifted a bag out of let's say a large trash can, and when I set it on the floor, I heard glass -- I heard a glass bottle. And I open that bag, and if that glass bottle was visible, not invisible, but visible, then I felt it would be necessary to take that out and put it where it needed to go for myself and the safety of others.

*Id.*

On June 25, 2024, the Referee issued her decision, reversing the determination of the UC Service Center and finding Claimant eligible for UC benefits. The Referee concluded that while Claimant had been warned formally within Employer's progressive discipline policy as well as informally,

> [t]he record does not reflect that [Claimant] consciously or deliberately disregarded any of [Employer's] rules/policies

4

for which he was terminated. [Employer] has not shown that the last incident was so egregious to warrant termination. . . . Accordingly, there can be no denial of benefits under Section 402(e) of the Law.

(Referee Decision, 6/25/24, at 2.)

On July 16, 2024, Employer timely appealed the Referee's decision to the Board which affirmed the Referee's decision in a decision and order mailed on November 5, 2024. In its decision, the Board made the following findings of fact:

1. [Claimant] was last employed as a full-time custodial worker for employer, Adams County, from June 15, 2016 until December 5, 2023.

2. [Employer] directed [Claimant] not to look through the trash.

3. [Claimant] was aware of the policy.

4. [Claimant] removed a glass bottle from an office trash can and left a note asking that glass bottles not be placed in the trash.

5. [Claimant] admitted to removing the bottle and leaving the note.

6. [Claimant] raised the safety issue with glass bottles and sharp objects in the trash on numerous occasions.

7. [Employer] terminated [Claimant] on December 5, 2025 for taking the glass bottle out of the trash can.

(Board's Decision, 11/5/25, Findings of Fact (FOF) 1-7, at 1.) The Board concluded as follows:

In this case, [Employer] has proven that it warned [Claimant] against rummaging through the trash when emptying trash cans. [Claimant] was aware of the policy as evidenced by his previous write-ups. [Employer]

5

terminated [Claimant] for removing a glass bottle from a trash can on December 5, 2023. [Claimant] admitted he removed the bottle. **However, he credibly testified that [the reason] he did it was for safety reasons**. **He further testified to an ongoing problem with glass bottles and other sharp objects being thrown in the trash. [Claimant] explained that all the little trash cans are emptied into a big trash bag. The combined trash becomes heavy and glass bottles break under the pressure of the trash. The glass bottles poke out of the trash bag causing safety concerns. [Claimant] addressed this problem with [Employer] in the past. [Employer] said it dealt with [Claimant's] concerns by asking the officer workers to avoid putting sharp objects and glass in the trash cans. [Employer] testified that although it requested this of the employees, the employees were not forbidden from putting glass and sharp objects in the trash. Thus, the Board finds [Claimant] had good cause for violating [Employer's] policy.** The Board acknowledges [Employer] had the right to terminate [Claimant's] employment; however, under these facts, he cannot be denied unemployment compensation benefits.

*Id.* at 2 (emphasis added). Employer timely appealed the Board's decision to this Court.

## II. Issues

On appeal,[3] Employer argues that it met its burden under the Law of establishing that Claimant engaged in willful misconduct by repeatedly violating workplace safety protocols and disregarding direct orders from his supervisors.

---

[3] Our review of the Board's order "is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014). As to matters of law, this Court's review is plenary. *County of Allegheny Orphans' Court/Fifth Judicial District of Pennsylvania v. Unemployment Compensation Board of Review*, 220 A.3d 730, 735 n.2 (Pa. Cmwlth. 2019).

Employer avers that over nearly a decade, Claimant was warned, reprimanded, and even suspended for rummaging through trash bins, failing to dispose of waste properly, and attempting to enforce his own recycling policies in defiance of Employer's directives. Employer further asserts that the Board's determination that Claimant had "good cause" for his repeated violations is not supported by substantial evidence because his claim that he was acting out of a concern for safety was contradicted by the fact that he violated Employer's safety policy purposed to be a means of protecting employees and knowingly placed himself at risk by rummaging through trash without adequate protective gear, despite being warned about the dangers of doing so.

### III. Discussion

Pursuant to Section 402(e) of the Law "[a]n employe shall be ineligible for compensation for any week . . . [i]n which [his] unemployment is due to [his] discharge or temporary suspension from work for willful misconduct connected with [his] work . . . ." 43 P.S. § 802(e). Willful misconduct is defined as (1) a wanton and willful disregard of an employer's interest; (2) a deliberate violation of an employer's rules; (3) a disregard of the standards of behavior that an employer can rightfully expect from an employee; or (4) negligence showing an intentional disregard of the employer's interest or the employee's duties and obligations. *Grieb v. Unemployment Compensation Board of Review*, 827 A.2d 422, 425 (Pa. 2003).

Where the claimant is discharged for a work rule violation, the employer has the burden to show that the claimant was aware that the work rule existed and that the claimant violated the rule. *Roberts v. Unemployment Compensation Board of Review*, 977 A.2d 12, 16 (Pa. Cmwlth. 2009); *Bishop Carroll High School v. Unemployment Compensation Board of Review*, 557 A.2d 1141, 1143 (Pa. Cmwlth. 1989). Once the employer establishes those elements, the burden shifts to the claimant to show that he had good cause to violate the rule or

7

that the rule was unreasonable. *Id.* Good cause is established "where the action of the employee is justified or reasonable under the circumstances." *Frumento v. Unemployment Compensation Board of Review*, 351 A.2d 631, 634 (Pa. 1976); *Sipps v. Unemployment Compensation Board of Review*, 181 A.3d 479, 482 (Pa. Cmwlth. 2018) (citation omitted).

"Whether a claimant has good cause to violate an employer's rule or policy is a question of law subject to this [C]ourt's review and should be viewed in light of all of the attendant circumstances." *Docherty v. Unemployment Compensation Board of Review*, 898 A.2d 1205, 1208 (Pa. Cmwlth. 2006). "To determine whether the claimant has satisfied this burden of proof (good cause), this Court must examine the reasons for the claimant's non-compliance and determine whether he or she acted reasonably under the circumstances." *Arbster v. Unemployment Compensation Board of Review*, 690 A.2d 805, 809 (Pa. Cmwlth. 1997) (citation omitted).

In the present case, Claimant's position before the Referee and Board was that the rule was unreasonable and that he had "good cause" for violating it. The Board did not find the rule was unreasonable but found only that Claimant had "good cause" for violating Employer's policy because "he credibly testified that [the reason] he did it was for safety reasons." (Board's Decision, 11/5/25, at 2.)

This Court has held that an employee does not commit willful misconduct if his employer's directive "directly threatens the [employee's] health or safety." *Dougherty v. Unemployment Compensation Board of Review*, 686 A.2d 53, 54 (Pa. Cmwlth. 1996). A claimant's "subjective fear" must be both "substantial" and "reasonable" to establish good cause. *Eckenrode v. Unemployment Compensation Board of Review*, 533 A.2d 833, 836 (Pa. Cmwlth. 1987).

In *McLean v. Unemployment Compensation Board of Review*, 383 A.2d 533, 534 (Pa. 1978), the employer's truck was returned from repairs still in

8

substandard condition. *Id.* at 535. The employer asked the claimant to inspect the truck to determine which repairs were necessary. *Id.* After the claimant's inspection, the truck was returned to the garage for repairs. *Id.* The claimant again inspected the truck and found that it was still in substandard condition. *Id.* The employer asked the claimant to drive the truck to determine its operability. *Id.* The claimant protested, but at the employer's insistence operated the truck. *Id.* After the truck's brakes failed on a mountain grade, the claimant informed the employer that the truck was unsafe for operation. *Id.* The employer told the claimant that the truck would be returned to the same garage for further repairs. *Id.* at 536. The claimant was discharged for refusing to drive the truck unless it was repaired by a different garage. *Id.* We affirmed the Board's denial of benefits reasoning that the claimant had no way of knowing what condition the truck would be in after the repairs and because the claimant substituted his own judgment for that of his employer. *Id.* However, our Supreme Court reversed, concluding that the claimant had good cause for refusing to drive the truck. *Id.* The claimant's safety concerns were not merely his own subjective beliefs. *Id.* at 536-37. The garage's repairs proved inadequate multiple times, and the employer was aware of this. *Id.* Additionally, the employer specifically asked the claimant for his judgment on the operability of the truck. *Id.* In sum, the claimant "justifiably refused to risk his life by relying on a repair shop which had already failed twice to put the truck in a safe condition." *Id.* at 537.

Similarly, in *Gwin v. Unemployment Compensation Appeal Board*, 427 A.2d 295, 298 (Pa. Cmwlth. 1981), this Court concluded that a claimant's fear of returning to work on a vertical boring machine after he was injured was both substantial and reasonable where the evidence established that others had sustained injury on the same machine, the employer placed a guard on the machine after the claimant was injured, and the claimant was willing to accept dismissal from the job rather than risk further injury.

9

Here, the Board credited Claimant's proffered reason for removing glass items from the trash was out of his concerns for his own safety. The Board also found that Claimant's fears and concerns were substantial and reasonable, noting that there was "an ongoing problem with glass bottles and other sharp objects being thrown in the trash," and that the "trash becomes heavy and glass bottles break under the pressure of the trash. The glass bottles poke out of the trash bag causing safety concerns." (Board's Decision, 11/5/25, at 2.) The Board also emphasized that, despite Claimant's repeated expressions of his concern for his safety, Employer merely asked employees not to put sharp objects in the trash cans but did not forbid them from putting glass and sharp objects in the trash. *Id.*

Based on these findings of the Board, which are supported by substantial evidence, we conclude that the Board did not err in finding that Claimant had good cause to refuse to follow Employer's safety policy.

The order of the Board is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Adams County,                              :
                    Petitioner             :
                                           :
          v.                               :     No. 1647 C.D. 2024
                                           :
Unemployment Compensation                  :
Board of Review,                           :
                    Respondent             :

## *ORDER*

AND NOW, this 30th day of  April, 2026, the November 5, 2024 order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge