383 A.2d 533

**Donald W. McLEAN, Appellant,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
**Commonwealth of Pennsylvania, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 27, 1977.

Decided March 23, 1978.

Michael A. Donadee, Shari F. Shink, Neighborhood Legal Services, Pittsburgh, for appellant.

Sydney Reuben, Unemployment Compensation Board of Review, Charles G. Hasson, Asst. Attys. Gen., Harrisburg, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

OPINION

MANDERINO, Justice.

Appellant was discharged by his employer, Perlite Manufacturing Company, on March 19, 1975. Both the hearing referee and the Unemployment Compensation Board of Review found appellant ineligible for unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law Act of December 5, 1936, P.L. (1937) 2897 as amended, 43 P.S. § 802(e). The decision was affirmed by order of the Commonwealth Court, and we granted appellant's petition for allowance of appeal.

Section 402(e) of the Act provides that an employee shall be ineligible for compensation for any week

"(e) in which his unemployment is due to his discharge or temporary suspension from work for wilfull misconduct connected with his work . . . ."

The Board found that appellant had wilfully refused to perform his duties. Appellant, however, argues that his conduct did not constitute wilful misconduct within the meaning of the statute, and that the employer, having the burden of proving wilful misconduct, failed to meet its burden of proof.

The question of whether or not an employee's actions constitute wilful misconduct is a question of law, subject to our review. *Unemployment Compensation Board of Review v. Cardellino*, 24 Pa.Cmwlth. 617, 357 A.2d 710 (1976); *Unemployment Compensation Board of Review v. Crilly*, 25 Pa.Cmwlth. 21, 358 A.2d 739 (1976); *Unemployment Compensation Board of Review v. Walton*, 21 Pa. Cmwlth. 47, 343 A.2d 70 (1975). The determination must be made in light of all the circumstances, including not only the employee's noncompliance with an employer's directive but also the reasons for that noncompliance. *Frumento v. Unemployment Compensation Board of Review*, 466 Pa. 81, 351 A.2d 631 (1976).

■ We have adopted as the definition of "wilful misconduct" the Superior Court's definition in *Moyer Unemployment Compensation Case,* 177 Pa.Super. 72, 74, 110 A.2d 753, 754 (1955):

"'Willful misconduct' . . . has been held to comprehend an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a *disregard of standards of behavior which the employer has a right to expect of an employee,* or negligence indicating an intentional disregard of the employer's interest or of the employe's duties and obligations to the employer." (Emphasis added.)

*Frumento v. Unemployment Compensation Board of Review,* 466 Pa. at 83–84, 351 A.2d at 632.

■ Thus, we must evaluate both the reasonableness of the employer's request in light of all the circumstances, and the employee's reasons for noncompliance. The employee's behavior cannot fall within "wilful misconduct" if it was justifiable or reasonable under the circumstances, since it cannot then be considered to be in wilful disregard of conduct the employer "has a right to expect." In other words, if there was "good cause" for the employee's action, it cannot be charged as wilful misconduct. *Frumento, supra,* at 634, 351 A.2d 631; *Crib Diaper Service v. Unemployment Compensation Board of Review,* 174 Pa.Super. 71, 98 A.2d 490, 492 (1953).

Applying this standard, we now look to the circumstances surrounding appellant's discharge. Appellant was the only witness before the Board, and his statement of the facts has not been contradicted.

■ He stated that when he arrived at the job site, his employer asked him to inspect one of its trucks to determine what repairs were necessary to make it operational. The truck had recently been repaired by CNS Service Company, but remained in substandard condition.

Appellant compiled the list of defects and told his employer that the employer had been charged by CNS Service

Company for work not done. The truck was then returned to CNS for repairs.

When appellant picked up the truck, he inspected it again and found that some of the work was still not done, although again charged for. He informed his employer, but the employer asked that he drive the truck for one day to determine its operability. Appellant protested on the ground of the truck's defect, and stated his own opinion that the vehicle did not conform to the legal requirements for highway operation as set by the United States Department of Transportation, the Interstate Commerce Commission, and the Commonwealth.

At the employer's insistence, appellant used the truck for one day, and the brakes failed on a mountain grade. Appellant then told his employer that the truck was unsafe and unsuitable for the use expected by the employer. The employer indicated that the truck would again be returned to CNS for repairs, and appellant replied that he would not drive the truck if repaired by CNS. He suggested, instead, that another garage be used or that the employer lease another truck. The employer insisted that appellant drive this truck as repaired by CNS, and discharged appellant for his refusal to do so.

The Referee's findings of fact, affirmed by the Board, are as follows:

"1. Claimant was last employed by Perlite Manufacturing Co., as a Truck Driver for eight days at $5.50 an hour, and his last day of work was March 19, 1975.

2. On March 19, 1975, claimant complained to the employer that the truck he had operated that day was not operating properly.

3. The employer advised the claimant he would take the truck to a garage for repairs.

4. Claimant informed the employer that if the truck was taken back to the same garage where it had previously been worked on, he would not drive the truck.

5. Claimant was discharged because he refused to perform the duties of the job with the employer's equipment that was available to him."

Reasoning from these facts, the Board concluded that "[t]he record reveals that the claimant believed the truck he was operating was unsafe and so informed his employer. The employer offered to have the truck repaired; and because the claimant did not agree with the employer as to who would repair the truck, he advised the employer that he would no longer operate the truck. Claimant was discharged for failing to perform the duties of the job with the equipment that was available to him. Since the claimant had no way of knowing what the condition of the truck would be after the repairs, his action in informing the employer that he would not operate the truck constitutes willful misconduct connected with the work. Therefore, the claimant must be disqualified from receiving benefits under the provisions of Section 402(e) of the Law."

The Commonwealth Court agreed with these conclusions, adding that claimant was discharged because in refusing to drive a truck repaired by CNS he was "substituting his judgment for that of his employer."

We cannot say that these findings are not supported by the evidence. They have been established in the record by appellant himself—the only person who testified. The reasoning and conclusions based upon these facts, however, ignore the dictates of *Frumento* that the reasonableness of the employer's request and good cause for the employee's actions be evaluated in light of *all* the attendant circumstances. When the appropriate concepts are applied to the facts in this case we are satisfied that unemployment compensation was erroneously denied to the appellant.

The record reveals not only appellant's belief that the truck was unsafe, but also the employer's knowledge of the defective condition. The employer revealed this knowledge when appellant was asked to inspect the vehicle, and when it was returned to CNS by the employer for further repairs.

The employer was also aware of the brake failure which occurred when appellant used it for the one-day test drive, and that the brake failure occurred after CNS had twice attempted repairs.

In light of the demonstrated inadequacy of CNS's repair services, the employer's demand that appellant drive the truck was unreasonable to the extent that the employer insisted it be repaired only by CNS. The employer had no right to expect an employee to rely upon a repair service which had twice failed in making repairs essential to safe operation; hence, the employee did not disregard a reasonable employer's request.

The Commonwealth Court held that, by refusing to drive a truck repaired by CNS appellant was in effect substituting his judgment for that of the employer. It was the employer, however, who on the first day requested that appellant inspect the truck for defects, apparently accepted appellant's findings, and sent the truck to CNS for repairs. After repairs the employer asked appellant to test-drive the truck for one day to see if it was operational, and when appellant said that the vehicle was unsafe, the employer again proposed to have it repaired. In effect, then, the employer specifically asked for appellant's judgment on the truck's condition, and relied upon it. The employer knew, and was aware that appellant knew, that CNS's repairs had been inadequate and that CNS had released an allegedly repaired truck in a dangerously defective condition. Appellant was not unreasonably insisting upon his own conditions of employment by refusing to risk his life once more on yet another potentially unreliable repair job.

Two faulty repair jobs which left not minor defects but potentially dangerous conditions are sufficient to put a reasonable person on notice. It is true that appellant could not know with absolute certainty that further repairs would be inadequate. However, as the Superior Court stated in upholding an award of benefits:

"relying on his prior experiences encountered in performing the same duties [he] was fully justified in concluding that he would be endangering his own safety . . .

"The apprehension of the claimant as to possible harm was not just a figment of his imagination . . . . His apprehension was not just subjective, as his reason was based on his experience on the job."

*Wilkes-Barre T. Corp. v. Unemployment Compensation Board of Review*, 215 Pa.Super. 353, 257 A.2d 275, 276 (1969).

Had appellant refused to drive an adequately repaired truck, or had he arbitrarily refused without good reason to drive a truck repaired by CNS, the Board's conclusions would be correct. Such was not the case however. Appellant was willing to drive the truck if repaired elsewhere, or to drive another truck for his employer. He justifiably refused to risk his life by relying on a repair shop which had already failed twice to put the truck in a safe condition. Such conduct cannot be considered "wilful misconduct" within the Act, and appellant is entitled to unemployment benefits.

The order of the Commonwealth Court is reversed and the matter is remanded to the Unemployment Compensation Board of Review for further proceedings consistent with this opinion.

PACKEL, former, J., did not participate in the decision of this case.