Sophie Bajor, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent; Northeastern Hospital, Intervening Respondent.

402

Argued June 5, 1978, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*Taylor Aspinwall,* with her *Harold I. Goodman* and *Edward Sparkman,* for petitioner.

*James T. Lynn, III,* with him *Obermayer, Rebmann, Maxwell & Hippel,* for intervening respondent.

OPINION BY JUDGE MENCER, August 31, 1978:

This is an appeal by Sophie Bajor (claimant) from an order of the Unemployment Compensation Board of Review (Board) affirming the referee's denial of benefits for willful misconduct under Section 402(e) of the Unemployment Compensation Law (Act), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e). We affirm.

Undisputed facts reveal that claimant had been employed approximately three years at Northeastern Hospital (Northeastern) as a nurse's aid. Following work on September 20, 1974, she became ill and was unable to work as scheduled between September 23 and 27. Northeastern was properly notified each day

of her absence. September 27 was claimant's last day of sick leave.

It was Northeastern's established policy, when an employee had exhausted his sick leave, to require that he report to work or request a leave of absence and submit a doctor's explanation of the reason for the absence. Claimant testified that she understood this policy, and the record shows that she had been on a leave of absence due to illness within the past year. Furthermore, on September 27, 1974, in telephone conversations with two Northeastern personnel officials, she was specifically reminded of this requirement and warned that a failure could lead to her termination.

The Board's findings of fact, which are supported by substantial evidence, indicate the events leading to claimant's discharge:

4. On September 27, 1974, claimant was in contact with the Director of Auxiliary Personnel and was informed to bring in a Doctor's Certificate or report for work on September 30, 1974 or apply for a leave of absence.

5. Claimant refused to apply for a leave of absence.[1]

6. On September 30, 1974, the employer forwarded a certified letter to claimant containing a leave of absence form which should be completed and accompanied by a doctor's certificate.[2]

---

[1] Two Northeastern personnel officers testified that while talking with claimant on September 27, she emphatically stated that she would not apply for a leave of absence on account of the possibility of losing her department position upon her return. Northeastern would guarantee a job but not necessarily in the former position. Nevertheless, if claimant had reported to work or requested a leave of absence on September 30, she would have been in compliance with Northeastern's policy.

[2] Claimant's friend signed for the certified letter, and claimant testified that she had no knowledge of it until November 1974.

7. The letter also informed claimant that it was necessary for the employer to receive the leave of absence form to keep claimant on the employment rolls.

8. On October 7, 1974, when claimant failed to respond to the employer's letter, she was discharged. (Footnotes added.)

Claimant contends that her illness prevented her from complying with the employer's rules and from responding to the letter and that, if able to do so, she would have applied for a leave of absence. Between October 14 and 29, 1974, she was hospitalized with diabetes, peripheral neuritis, and decubitus ulcer. She was in intensive care for four days.

The record shows that, in mid-November, claimant contacted Northeastern for the first time since September 27, 1974, immediately after she first learned of her discharge. She did not explain her failure to apply for a leave of absence or ask for reconsideration; rather, she only discussed her health.

The Board concluded that claimant's refusal to apply for a leave of absence and failure to maintain contact with her employer constituted willful misconduct.

' "Willful misconduct" . . . has been held to comprehend an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of an employee, or negligence indicating an intentional disregard of the employer's interest or of the employe's duties and obligations to the employer.'

*Frumento v. Unemployment Compensation Board of Review,* 466 Pa. 81, 83-84, 351 A.2d 631, 632 (1976).

Claimant argues that she may not be charged for willful misconduct because she was *unable* to comply

with the employment requirements due to illness and such incapacity may not be characterized as a conscious or willful disregard nor as unreasonable under the circumstances. She relies upon the principle set forth in *McLean v. Unemployment Compensation Board of Review,* 476 Pa. 617, 383 A.2d 533, 535 (1978):

> [W]e must evaluate both the reasonableness of the employer's request in light of all the cirumstances, and the employee's reasons for noncompliance. The employee's behavior cannot fall within 'wilful misconduct' if it was justifiable or reasonable under the circumstances, since it cannot then be considered to be in wilful disregard of conduct the employer 'has a right to expect.' In other words, if there was 'good cause' for the employee's action, it cannot be charged as wilful misconduct.

Even if we were to accept claimant's contention that she was unable to comply with Northeastern's rules and respond to the letter between September 30 and the time of her hospitalization, there is no indication in the record that she was unable to contact Northeastern, explain her situation, and request a leave of absence after her recovery. Even when claimant finally telephoned her employer, she did not explain her failure to comply or request reconsideration.

Claimant's emphatic refusal to comply with her employer's request that she apply for a leave of absence on September 27 in the face of a warning that it could lead to her discharge, combined with her subsequent failure to contact her employer when she regained her strength and competence, demonstrates a conscious disregard of employer standards of behavior which he has a right to expect and of which claimant admitted having actual knowledge. Therefore,

claimant was properly charged with willful misconduct. *See Williams v. Unemployment Compensation Board of Review*, 34 Pa. Commonwealth Ct. 640, 383 A.2d 963 (1978) (claimant's failure to keep his employer informed of his condition during an absence due to illness when instructed to do so was held to be willful misconduct).

ORDER

AND NOW, this 31st day of August, 1978, the order of the Unemployment Compensation Board of Review, dated January 12, 1977, denying benefits to Sophie Bajor, is affirmed.