Charlotte Hartmann-Hansen, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Northampton County Area Community College, Intervenor.

Argued April 10, 1980, before President Judge CRUMLISH and Judges BLATT and WILLIAMS, JR., sitting as a panel of three.

*Joel M. Scheer,* for petitioner.

*Steven Marcuse,* Assistant Attorney General, with him *Richard Wagner,* Chief Counsel, and *Edward G. Biester, Jr.,* Attorney General, for respondent.

OPINION BY JUDGE WILLIAMS, JR., September 25, 1980:

This is an appeal from an order of the Unemployment Compensation Board of Review denying unemployment benefits to Charlotte Hartmann-Hansen (claimant). The denial of benefits was pursuant to Section 402(e) of the Unemployment Compensation Law.[1]

The claimant was last employed by Northampton County Area Community College (employer) as an assistant professor of dental hygiene. She was one of three full-time faculty members. She held that position for approximately three years prior to her suspension on May 12, 1978.

The record indicates that in August of 1977 the claimant volunteered for the position of Clinic Coordinator. She had originally been assigned to teach Clinic II in the fall semester of that year and Clinic III in the spring semester of 1978. As Clinic Coordi-

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e).

nator or "lead teacher" she assumed the additional duties of coordinating the clinical assignments for the second year dental hygiene students. Those duties included the task of computing the students' grades for the clinical course.

On May 5, 1978 the claimant submitted a memorandum to one Leonard O'Hara, Dean of Allied Health. In the memo, the claimant delineated a list of 17 "additional duties" which she had performed during the year as coordinator. She asked to be relieved of those duties and to return to her regular status as a full time teacher. The memo concluded with the following statement: "Unless informed in writing by May 9, 1978, I will assume you have accepted my request and the return of clinic coordination to the administration where it properly belongs. Should you deny this request, your letter must spell out in detail why it is denied and why I was assigned clinic coordination as excess workload. Furthermore, define the administration's objectives for Clinic III performance and final grading criteria."

In a memorandum dated May 9, 1978, Dean O'Hara denied the claimant's request to be relieved of her duties. He explained that the claimant was expected to fulfill her assignment since the assumed duties were normal for a full-time permanent faculty member.

However, on May 11, 1978 the claimant sent a second memorandum to the dean. In it she reasoned that since the dean had "answered but not responded" to her memo, he had accepted her request to be relieved of her duties as coordinator. She added that she was enclosing the master book for student grades and the requirements for the dean's "use in completing the grading of this course." On that same day, the claimant also sent a memo to the college records office declaring herself relieved of her duties as coordinator. The memo notified the office that any future matters

relating to records and grades should be sent to Dean O'Hara.

A meeting was called on May 12, 1978 to review and clarify claimant's duties. Present at the meeting were the claimant, Dean O'Hara, the Dean of Employee Relations and a union representative. During the course of the meeting the claimant was asked if she would resume her duties as Clinic III Coordinator and compute the grades for students. That same question was put to the claimant five times; however, she never responded to the question negatively or affirmatively. At the conclusion of the meeting, Dean O'Hara handed the claimant a memorandum dated May 12, 1978 in which he recommended her suspension for willful neglect of duty.

On May 16, 1978 the claimant sent Dean O'Hara a note asserting that she had not refused to complete grades nor had she abandoned the rest of her responsibilities for the spring semester. The dean made no response to the note.

Following an investigation of the activities of the claimant which led to her suspension, Dean O'Hara sent a memo dated May 17, 1978 to the Vice President for Academic Affairs. The memo recommended that the claimant be terminated for willful and persistent neglect of duty. On July 17, 1978 the President of the College sent the claimant a letter informing her of her discharge for willful neglect in refusing to carry out her responsibilities.

The duties associated with the position of Clinic Coordinator consisted of at least the 17 duties which the claimant had delineated in her May 5th memo. However, the instant controversy centers around the duty to compute the grades for the second semester dental hygiene clinic students. The claimant's refusal to grade the students formed the primary grounds for her dismissal for neglect of duty.

The claimant's argument on appeal is that the employer failed to meet its burden of proving willful misconduct because her failure to compute the grades was justified. She also contends that she never stated that she would not grade the students. She contends further that the employer never established that her actions constituted a deliberate intention to disobey the employer's rules.

The term "willful misconduct" is not defined in the Act. The standards to be applied are defined in numerous appellate court decisions in Pennsylvania. Where an employee is conscious that his actions are inimical to the interests of his employer, that employee is guilty of willful misconduct. *Curtis v. Unemployment Compensation Board of Review,* 32 Pa. Commonwealth Ct. 462, 379 A.2d 1069 (1977).

Of course, where an employee's reason for not complying with an employer's request is justifiable or reasonable under the circumstances it cannot be considered willful misconduct. *McLean v. Unemployment Compensation Board of Review,* 476 Pa. 617, 383 A.2d 533 (1978).

A review of the record reveals the reason advanced by the claimant for her failure to resume the responsibility of computing the spring semester grades for the clinical students. She reasoned that she feared she would be unjustly criticized as she had been during the fall semester for grading too harshly. When the claimant returned the master grade book to the dean on May 11th, there was less than one week remaining before the end of the semester, and less than two weeks before the grades were due to be turned in. Her memo dated that same day indicated that she was "assigning" to the dean the task of grading the clinical students. That forced the employer to engage in last minute efforts to recruit additional part-time help and to reallocate duties to other staff members in order to

cover the responsibilities which the claimant abdicated.

We do not think that the reason advanced by the claimant for her conduct rises to the level of justification in light of the efforts of the dean to allay her fears by promising her support. Additionally, one must wonder about her timing in using her alleged fear of criticism as an excuse for not grading the students.

Even if we were to assume without deciding that the turning over of the master grade book was justified, that does not justify keeping the employer in the dark as to her intentions concerning the grading of students. Considering the fact that there was only a limited amount of time left before grades were due, the employer's request was a reasonable one, or at least warranted an answer one way or the other. This case is distinguishable from the situation in *Marositz v. Unemployment Compensation Board of Review*, 52 Pa. Commonwealth Ct. 444, 415 A.2d 1006 (1980). In *Marositz* we found that the claimant's refusal to respond affirmatively or negatively to a certain question put to her by the employer was justifiable. Due to the circumstances in which the question was asked in that case, the question was one which that claimant could not answer safely one way or the other. In the setting of the *Marositz* case the employer had no right to expect an answer.

In the instant case, however, it was precisely the undisputed conduct of the claimant that put the employer in the position of having to know the answer to the question. Furthermore, due to the time constraints involved in computing the grades before the deadline, the instant claimant had a duty either to comply with her employer's request or at least to respond to his request for cooperation. The claimant's failure to give a definite answer, together with the prior

delivery of the grade book to the dean at a critical time, constituted circumstances where the claimant should have been conscious that her actions were inimical to the interests of her employer and her students as well.

The conclusion of the Board that the claimant's conduct rose to the level of willful misconduct within the meaning of Section 402(e) finds support in the evidence of record. The order of the Board denying benefits to the claimant is affirmed.

## ORDER

AND Now, the 25th day of September, 1980, the order of the Unemployment Compensation Board of Review dated December 21, 1978, at Decision No. B-167257, is affirmed.