# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mary R. Powers,                                  :
                           Petitioner            :
                                                 :
          v.                                     :     No. 837 C.D. 2017
                                                 :     Submitted: December 8, 2017
Unemployment Compensation                        :
Board of Review,                                 :
                           Respondent            :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge


*OPINION NOT REPORTED*


**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                    **FILED:  May 18, 2018**


          Petitioner Mary R. Powers (Claimant) petitions for review of an order
of the Unemployment Compensation Board of Review (Board).  The Board affirmed
an Unemployment Compensation Referee's (Referee) decision, denying Claimant
unemployment compensation benefits pursuant to Section 402(e) of the
Unemployment Compensation Law (Law),[1] based on willful misconduct.  For the
reasons set forth below, we affirm.

          Claimant filed for unemployment compensation benefits subsequent to
her discharge from employment with the School District of Philadelphia (Employer).
The Erie UC Service Center (Service Center) determined that Claimant was not

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*,
43 P.S. § 802(e).

ineligible for unemployment compensation benefits under Section 402(e) of the Law. (Certified Record (C.R.), Item No. 5.) Employer appealed the Service Center's determination, and a Referee conducted a hearing. Employer presented the testimony of Principal Shauneille Taylor (Principal). Claimant testified on her own behalf.

Claimant testified that she worked full-time as a one-on-one special education assistant from October 5, 2005, to November 5, 2016. (C.R., Item No. 9 at 4.) She stated that Principal terminated her employment via email. (*Id.* at 5.)

Principal testified that on February 25, 2016, she recommended that Claimant be discharged. (*Id.* at 9.) Principal testified to the following events:

> [Principal]: She was on her cell phone. It was in the computer lab. Students were in the lab with [Claimant]. As I approached—as I entered the computer lab I saw [Claimant] in the rear of the computer lab on her cell phone and I asked if she would please step out of the classroom. She refused to. She stated that she was on the telephone reporting—contacting the authorities in reference to bullying. I asked her to please hang the phone up and to leave the room. At that time, she exchanged words with myself, refusing to get off the phone. She began to elevate her voice. I wanted to contain the students to make sure that they were safe, so I asked a classroom teacher to please remove the students out of the room and I then asked [Claimant] if she could please leave the premises. [Claimant] refused multiple times. As she was going down the stairs she stated that words that was [sic] . . .
>
> R[eferee]: I want to hear what words . . .
>
> [Principal]: . . . where I felt threatened.
>
> R[eferee]: I want to hear the words that led you to feel threatened ma'am.

2

[Principal]: The words, the words that she used for me not to—to meet her outside. She also stated that I was a prima donna and a princess. So I would have to refer to the documents. And then she—when I asked her to leave, in the stairwell up another teacher witnessed it where she was constantly refusing to leave.

R[eferee]: Where was—was—okay. The Claimant was moving down the stairs or walking down the stairs?

[Principal]: Yes. Yes. She finally made her way out of the classroom. Once I removed the students out she finally made her way out of the classroom and down the stairs. And I had to make sure for everyone's safety that she exited the building. She then ended up on the first floor. She walked into the main office and she started yelling at my secretary.

R[eferee]: What was she saying?

[Principal]: She was saying to my secretary and you back there and you back there I have something for you. And then that's [when] I proceeded to call 911.

R[eferee]: Did 911 authorities come?

[Principal]: Yes.

R[eferee]: And what happened when they arrived?

[Principal]: I filed a report.

R[eferee]: Was the Claimant still at the worksite when the authorities came?

[Principal]: No. She was outside and the police—they just stayed in the building to make sure that, you know, eventually [Claimant] would leave.

R[eferee]: Now the Claimant told me that she was alleged to have used profanity. . . . What, what profanity is being alleged here? What's the profanity?

[Principal]: Well . . .

R[eferee]: I need to know if—what was said that was profane.

[Principal]: I'm referencing my notes.

R[eferee]: Mm-hmm. Was it said to you?

3

[Principal]: Yes. Yes. She stated you're not going to harass me. You're not going to treat me with disrespect. I always get my way. Who do you think you are? I'm not leaving this damn school. I don't care you're the principal. She also stated and you don't even deserve to be sitting. She stated to my secretary you don't even deserve to be sitting in that position and I got something else for you too. When I asked her to leave, I'm not leaving this damn school. Who do you think you are? I'm not leaving. I don't care you're the damn principal.

(*Id.* at 10-11.)

Principal also testified that, at one point during the incident, Claimant pointed her fingers in Principal's face. (*Id.* at 11.) After this incident, Employer's Assistant Superintendent assigned Claimant to Employer's Central Office. (*Id.* at 11-12.) Employer scheduled a conference to review the incident and then rescheduled it to October 24, 2016, because Claimant went on sick leave. (*Id.* at 12.)

Principal testified that the employee handbook contains a policy prohibiting employees from using cell phones in front of students. (*Id.* at 17.) She also stated that Employer's protocol requires an employee to notify the main office after discovering bullying. (*Id.* at 18.) Further, in her capacity as a one-on-one assistant, Employer's policy required Claimant to inform the classroom teacher of a bullying concern so the classroom teacher could address the issue. (*Id.*) Principal testified that this procedure is set forth in the employee handbook. (*Id.* at 19.)

Claimant testified that she used her cell phone because her student was being harassed and bullied and felt unsafe. (*Id.* at 20.) Claimant stated that although the instances of bullying did not occur in the computer lab, there were other instances of bullying prior to February 25, 2016. (*Id.* at 20-21.) Claimant testified that she called the hotline to determine the necessary procedures to document the prior events. (*Id.*)

4

Claimant stated that Principal called her into the hallway and gave her a letter indicating that there would be a hearing in the future. (*Id.* at 21.) Claimant denied swearing at or threatening Principal. (*Id.*) Claimant also stated that, when she went to the main office on the first floor, Principal's secretary told her to leave the office and called her crazy. (*Id.* at 21-22.) Claimant explained that this secretary previously called her stupid, nosey, and told her to shut up. (*Id.* at 22.) Claimant stated that she told the secretary she would see her in court and that the secretary did not deserve her position because of her unprofessionalism. (*Id.*) Claimant stated that she refused to leave the building after the incident, because she was concerned about her student's safety and worried that her student would be left without an assistant. (*Id.* at 26.) After this date, Claimant went on sick leave. (*Id.* at 24.)

Following the hearing, the Referee issued a decision, denying unemployment compensation benefits pursuant to Section 402(e) of the Law. The Referee made the following relevant findings:

1. The Claimant was employed full-time with the School District of Philadelphia, as a One[-]to[-]One Assistant with Special Education, earning $13.85 per hour. The Claimant began employment on October 5, 2005, and was last employed on November 5, 2016.

2. On February 25, 2016, the Claimant was with her assigned student in a computer lab.

3. The principal, S. [Taylor], observed the Claimant on her personal cell phone while in the computer lab.

4. The Principal approached the Claimant, and advised the Claimant that she was to take her phone call outside of the classroom.

5

5.   The Claimant began to become agitated and upset, did not get off of her cell phone, and began to raise her voice at the Principal.

6.   The Principal requested for the Claimant to not raise her voice and take her phone call outside of the classroom.

7.   The Claimant continued to raise her voice at the Principal and did not end her phone call.

8.   The Principal requested that the computer teacher remove the students from the classroom.

9.   Subsequently, the Principal and the Claimant left the computer lab.

10.  The Principal requested that the Claimant leave the worksite immediately.

11.  The Claimant refused to leave the worksite, and stated to the Principal, "I am not leaving this d**n school;" "who do you think you are?"

12.  Several times, the Claimant referred to the Principal as a "princess."

13.  The Claimant went to the 1st floor office, and began to confront a secretary.

14.  The Claimant was yelling at the secretary, and advised the secretary that she would be waiting outside for the secretary.

15.  The Claimant told the Principal that she would be waiting outside for the Principal.

16.  The Principal called "911", and requested assistance from the police.

17.  The Claimant went outside of the building, when the police arrived.

18. The police stayed at the worksite, until the Claimant had left the school property.

19. The Principal reported the conduct of the Claimant to the School District.

20. The School District removed the Claimant from the school, and assigned her to the main District office pending a hearing on the February 25, 2016 incident.

21. The Claimant went out on a sick leave, and did not return to the school.

22. The Employer scheduled an internal hearing to address the February 25, 2016 incident, which was to be held on October 24, 2016.

23. The Claimant and the Employer attended the hearing.

24. On November 5, 2016, the Employer officially discharged the Claimant for inappropriate conduct, use of profanity, making terroristic threats.

(C.R., Item No. 10.)

The Referee resolved any conflicts in testimony in Employer's favor. (*Id.*) The Referee expressly credited the Principal's testimony that the situation escalated to a point that Principal directed a teacher to remove students from the classroom due to Claimant's behavior and contacted 911 to request police assistance. (*Id.*) The Referee found that Claimant's conduct fell below the standards of behavior that an employer can reasonably expect of its employees. (*Id.*) The Referee reasoned that Claimant created a disruption at the worksite when she refused to leave the worksite, spoke in a loud manner at the school, referred to the Principal as a "princess," and told the Principal that she would meet her outside. (*Id.*) The Referee further reasoned that Claimant's conduct disrupted the orderly, efficient operation

7

of the workplace and that Claimant's statements to Principal were inappropriate, unnecessary, and uncalled for under the circumstances. (*Id.*) The Referee concluded that Claimant did not present any testimony or evidence to establish good cause or justification for her conduct on February 25, 2016. (*Id.*) The Referee, therefore, concluded that Claimant's actions rose to the level of willful misconduct and denied her benefits. (*Id.*)

Claimant appealed the Referee's decision to the Board, and the Board affirmed the Referee's decision. (C.R., Item No. 15.) The Board adopted and incorporated the Referee's findings of fact and conclusions of law, with modification. (*Id.*) The Board amended finding of fact 14 to provide: "While yelling at the secretary, the claimant told the secretary, 'I have something for you.'" (*Id.*) The Board amended finding of fact 15 to provide: "The claimant stated to the principal, 'You think you're the princess, come outside.'" (*Id.*) The Board credited Employer's testimony and discredited Claimant's testimony to the extent it contradicted Employer's. (*Id.*)

The Board rejected Claimant's argument that Employer failed to follow proper procedures. (*Id.*) The Board explained that the issue before it was whether Claimant's actions constituted willful misconduct, and it was not within the Board's purview to determine whether Employer had a right to discharge Claimant or whether Employer followed proper procedures in doing so. (*Id.*)

On appeal,[2] Claimant argues that substantial evidence does not exist to support the Board's finding that Claimant caused a disruption at the worksite, used

---

[2] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

profane language, and made threats. Claimant also argues that the Board erred as a matter of law in concluding that Claimant was ineligible for benefits under Section 402(e) of the Law.

Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion. *Johnson v. Unemployment Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id*. A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Principal v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977). The Board's findings of fact are conclusive on appeal only so long as the record taken as a whole contains substantial evidence to support them. *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984).

First, we address Claimant's argument that substantial evidence does not exist to support a finding that she caused a disruption at the worksite, used profane language, and made threats. Claimant contends that Principal had no proof regarding the use of profanity or threats and that Principal's claims are based only on hearsay. In an unemployment case, the Board is the final finder of fact and arbiter of credibility. *Johnson v. Unemployment Comp. Bd. of Review*, 744 A.2d 817, 820 (Pa. Cmwlth. 2000). The Board is also empowered to resolve conflicts in evidence. *DeRiggi v. Unemployment Comp. Bd. of Review*, 856 A.2d 253, 255 (Pa. Cmwlth. 2004).

9

The Board credited Principal's testimony and found that Claimant created a disruption, used profanity, and made threats. (C.R., Item No. 15.) The Board based its finding on Principal's testimony that Claimant used her personal cell phone during school hours, refused to leave the classroom when Principal asked her to do so, and then raised her voice at Principal, causing Principal to direct a teacher to remove students from the classroom. Principal also testified that Claimant used profanity when she stated, "I'm not leaving this damn school."[3] (C.R., Item No. 9 at 10-11.) Based on Principal's testimony, the Board found that Claimant refused to end her phone call and that her interaction with Principal escalated such that it caused a disruption at the school. (*Id.*) Claimant told Principal to meet her outside and told Principal's secretary that she had something for her. Thus, substantial evidence exists to support the finding that Claimant created a disruption at the worksite, used profane language, and made threats.

Next, we address Claimant's contention that the Board erred in concluding that Claimant's actions rose to the level of willful misconduct. Claimant's arguments focus on what she considers to be an inadequate termination procedure and Employer's alleged gross negligence as to the student assigned to Claimant. Claimant asserts that there was collusion between Principal, other faculty, and her union representative, because the union representative came late to meetings and "clearly had not studied" Claimant's case. (Claimant's Br. at 7.) She also asserts that Employer utilized a biased termination procedure. (*Id.* at 8.) She further complains that she did not receive a certified letter of termination. (*Id.*) Although she did not raise this issue before the Referee, she also asserts that the government

---

[3] Even if the use of "damn" did not constitute profanity, Claimant's other actions rose to the level of willful misconduct.

10

failed to address her Right-to-Know Law[4] request about Principal's records in a timely manner. (*Id.*) Claimant contends that, after her termination, Employer left her special education student without an aide, in violation of the student's Individualized Education Program (IEP). (*Id.* at 11.) Based on these events, Claimant argues she deserves to receive unemployment compensation benefits and asks this Court to reverse the Board's order.[5] (*Id.* at 13.) The issue before the Court, however, is whether Claimant's actions constituted willful misconduct under Section 402(e) of the Law. Claimant's complaints about whether Employer had a right to discharge Claimant, followed the proper procedures in doing so, or acted in a negligent manner towards its students, are outside the scope of this matter.

Section 402(e) of the Law provides, in part, that an employee shall be ineligible for compensation for any week in which "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." The employer bears the burden of proving that the claimant's unemployment is due to the claimant's willful misconduct. *Walsh v. Unemployment Comp. Bd. of Review*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008). The term "willful misconduct" is not defined by statute. The courts, however, have defined "willful misconduct" as:

> (a) wanton or willful disregard for an employer's interests, (b) deliberate violation of an employer's rules, (c) disregard for standards of behavior which an employer can rightfully expect of an employee, or (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

---

[4] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-.3104.

[5] Claimant actually requests that the Court reverse the Referee's decision, which she describes as biased. Claimant does not develop any argument that the Referee acted in a biased manner, and the Court perceives no bias in the Referee's decision.

*Grieb v. Unemployment Comp. Bd. of Review*, 827 A.2d 422, 425 (Pa. 2003).

Whether an alleged disregard of standards constitutes willful misconduct depends on a variety of factors like the employee's non-compliance with an employer's directive, the reasonableness of the employer's request, and the employee's reasons for non-compliance, viewed in light of all of the circumstances. *Rossi v. Pa. Unemployment Comp. Bd. of Review*, 676 A.2d 194, 197 (Pa. 1996). An employee's behavior does not constitute willful misconduct if her actions were justifiable or reasonable under the circumstances. *McLean v. Unemployment Comp. Bd. of Review*, 383 A.2d 533, 535 (Pa. 1978). "In other words, if there was 'good cause' for the employee's action, it cannot be charged as willful misconduct," as the employee cannot be considered to be in willful disregard of conduct the employer has a right to expect. *Id.*

Here, Claimant did not comply with Principal's directive to end the phone call on Claimant's personal cell phone and leave the classroom. This request was reasonable based on Principal's testimony that the employee handbook prohibits employees from using their cell phones in front of students. (C.R., Item No. 9 at 17.) Because Claimant failed to comply with Employer's reasonable directive, Claimant's conduct rose to the level of willful misconduct. We must determine, therefore, whether Claimant met her burden to demonstrate good cause for her actions.

Claimant attempts to show good cause by asserting that because she was responsible for the safety of her special education student, which was the purpose for the phone call, she had good cause to use her cell phone and ignore Principal's directive to end the call. She contends that Employer ignored the pervasive bullying of this student and failed to provide the student's parents with the

12

necessary forms needed to make a complaint. She states that the student felt unsafe at school and informed her teachers, but the school did nothing. Thus, Claimant argues she had good cause to use her cell phone to protect her student and herself. Claimant, however, does not argue that she had good cause for causing a disruption in the workplace, using profanity, and making threats. Claimant states that she was provoked by Principal and other members of Employer's staff and did not use profanity or make threats. She also states that she would never cause any action that willfully impedes school learning or student safety.

Employer testified, however, that its protocol directs an employee to notify the main office when an employee discovers instances of bullying. (*Id.* at 18.) Employer's protocol also requires an employee to first notify other administrators. (*Id.*) More specifically, one-to-one assistants must notify the classroom teacher so that the teacher may handle the situation. (*Id.*) Even if Employer's procedures required Claimant to call the bullying hotline, she did not have good cause for creating the subsequent disruption, using profane language, and making threats towards Principal and Principal's secretary. Because Claimant offers no evidence showing she had good cause for violating Employer's policy and acting in the manner she did, the Board did not err in concluding that Claimant engaged in willful misconduct.

For the foregoing reasons, we affirm the Board's order.

P. KEVIN BROBSON, Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mary R. Powers, : 
                      Petitioner : 
                       : 
        v. :   No. 837 C.D. 2017
                       : 
Unemployment Compensation : 
Board of Review, : 
                 Respondent : 

## **O R D E R**

AND NOW, this 18th day of May, 2018, the order of the Unemployment Compensation Board of Review is AFFIRMED.

 

P. KEVIN BROBSON, Judge