# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Johanna B. Altamirano,       :
           Petitioner       :
           :
           v.       :    No. 1108 C.D. 2020
           :    Submitted: November 5, 2021
Unemployment Compensation       :
Board of Review,       :
           Respondent       :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge[1]
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge


**OPINION NOT REPORTED**


MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER           FILED: May 4, 2022


Johanna B. Altamirano (Claimant) petitions for review of an October 5, 2020 Order of the Unemployment Compensation (UC) Board of Review (Board), affirming the decision of the Referee that found Claimant ineligible for UC benefits pursuant to Section 402(e) of the Unemployment Compensation Law[2] (Law) because Claimant's unemployment was due to willful misconduct. On appeal, Claimant argues that she is not ineligible for benefits because the Northampton County, Gracedale Nursing Home (Employer) directive with which she did not

---

[1] This case was assigned to the opinion writer before January 7, 2022, when Judge Cohn Jubelirer became President Judge.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) provides that "[a]n employe shall be ineligible for compensation for any week" "[i]n which [her] unemployment is due to [her] discharge . . . from work for willful misconduct connected with [her] work . . . ." *Id.*

comply was not reasonable and, alternatively, she had good cause for her actions. Because the credited evidence supports that Claimant's actions amounted to willful misconduct and that Claimant did not meet her burden of proving otherwise under the circumstances, the Board did not err in finding her ineligible for benefits pursuant to Section 402(e), and we, therefore, affirm.

## I. BACKGROUND

Claimant worked for Employer as a part-time Certified Nursing Assistant (CNA) from June 16, 2018, to April 3, 2020. Claimant filed for benefits on April 6, 2020. In a Notice of Determination, the UC Service Center concluded that Claimant had "walked off the job" on April 3, 2020 and found Claimant ineligible for benefits pursuant to Section 402(b) of the Law[3] because Claimant had initiated her separation from work and had not established a necessitous and compelling reason for doing so. (Certified Record (C.R.) at 30.) Claimant appealed the UC Service Center's determination. A telephonic hearing was held before the Referee, at which Claimant appeared and was represented by counsel, and Employer appeared with a witness and was represented by counsel.

### A. *Proceedings before the Referee*

#### 1. Claimant's Evidence

Claimant testified to the following.[4] Claimant provided daily care to Employer's residents and was normally assigned to Employer's Southeast 2 unit.

---

[3] Section 402(b) provides that "[a]n employe shall be ineligible for compensation for any week" "[i]n which [her] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature . . . ." 43 P.S. § 802(b).

[4] We acknowledge that the transcript specifies that "[C]laimant was difficult to understand[,] and her voice sounded like it was coming out of a tunnel, multiple inaudibles on the [C]laimant's testimony." (Certified Record at 69.)

2

Claimant received an email from Employer on March 27, 2020, explaining, among other things, that employees would have to wear "home masks" and were required to stay in their respective units. (C.R. at 78-79.) Claimant received an email from Employer on March 28, 2020, instructing her to work at a new location, either Tower 7 or 8, and that each employee needed to wear an N95 mask. Claimant asked a supervisor for personal protective equipment (PPE) on March 28, 2020, but was not provided any; instead, she used homemade masks beginning on March 29, 2020. Claimant was afraid of COVID-19, had been told by Employer that there were no active COVID-19 cases in Southeast 2, and felt that if she moved, she could contract COVID-19. Claimant had not been informed that Tower 7 or Tower 8 had any COVID-19 patients.

Claimant testified that, on April 2, 2020, she was scheduled to work from 3:00 p.m. to 11:00 p.m. (*Id*. at 80.) Claimant was told, at some point during that day, that she would need to move to Tower 7 and to wear an N95 mask, but she was not provided with one. (*Id*. at 77-78, 85.) Claimant called Employer on April 2, 2020, and explained that, while she wanted to help, she did not want to move to a different floor in the middle of a shift because she was scared for herself and her daughter (Daughter), who has a medical condition that makes Daughter vulnerable to COVID-19 should Daughter contract it second-hand from Claimant. (*Id*. at 77-78, 80-81, 85.) Claimant testified that after speaking with Employer, she completed her shift that evening. (*Id*. at 81.)

On April 3, 2020, Claimant was scheduled to work in Southeast 2 starting at 7:00 a.m., but was told by "Candy," the nurse who was in charge, to go to Tower 7 at the beginning of her shift. Claimant asked "Candy" where this request originated from, and "Candy" explained that the downstairs supervisor had called. Claimant

3

called the downstairs supervisor to say she did not want to move, was told that she was needed in Tower 7, and indicated that she did not want to go there but wanted to go home. Claimant was advised that if she left, she would lose her job. (*Id.* at 83, 87.) Claimant testified that she told Employer that she did not want to work in Tower 7 because of the lack of appropriate safety equipment and her fear for Daughter. When told that she would lose her job if she did not report to Tower 7, Claimant's "only words" were that she loved her job but loved Daughter more, so she clocked out. (*Id.* at 83.) Claimant felt that if she was not needed at her normal unit, she would not work that day due to the risk of contracting COVID-19.

On cross-examination, Claimant testified that she suspected that Tower 7 had active COVID-19 infections because employees were specifically told to wear N95 masks there. When asked if she knew whether face masks or other PPE was available in Tower 7, Claimant did not believe so because, when she asked, she was not given one. Claimant worked 12 minutes total on April 3, 2020, and she did not notify anyone when she left. (*Id.* at 87-88.) While Claimant believed her normal floor was adequately staffed when she left, she did not know if Tower 7 was adequately staffed.

### 2. Employer's Evidence

Roseann Plebani, Employer's Assistant Director of Nursing (Assistant Director), testified as follows. Employer circulated an email explaining that it would limit transfers from unit to unit as much as possible, "[b]ut due to staffing needs on other units and care needs of other residents on other units[,] we would inevitably have to transfer people based on the needs of [] care when it could [not] be prevented 100[%]." (*Id.* at 91.) After Assistant Director was informed that Claimant was refusing to go to another unit, Assistant Director requested that Claimant go to her

4

office to discuss Claimant's concerns, but Claimant had already left. Employer had no record of Claimant indicating that Daughter was at risk of contracting COVID-19. (*Id.*) Employer had PPE that was available to all staff, it was following the Centers for Disease Control and Prevention and Pennsylvania Department of Health guidelines at the time, and N95 masks were required when providing direct care to residents. (*Id.* at 91-92.)

Assistant Director further testified that Employer would have been short staffed in Tower 7 based on Claimant's refusal to work there. She explained that the refusal to go to a unit to provide resident care was insubordination and abandonment of one's position. (*Id.* at 93.) On cross-examination, Assistant Director acknowledged that at least one patient passed away while positive for COVID-19 on or about April 1, 2020, and would not have doubted if there were other COVID-19 cases at that time. (*Id.* at 94.)

### B. Referee's Decision

Following the hearing, the Referee issued a decision finding Claimant ineligible for benefits pursuant to Section 402(e) of the Law, explaining that, although the UC Service Center initially decided Claimant's case under Section 402(**b**), Section 402(**e**) was the applicable section. The Referee concluded that Claimant lacked the intent to quit her job, and, therefore, Claimant's separation was a discharge. The Referee made the following relevant findings of fact:

> 1. The [C]laimant worked as a [CNA] for [Employer] from June 16, 2018[,] through April 3, 2020[.]
>
> 2. The [C]laimant has a daughter that is at high risk [of] contract[ing] the COVID-19 virus.
>
> 3. The [C]laimant works in a retirement home.

4. The [C]laimant did not want to be transferred to a new work area because she heard rumors that some patients may have the COVID-19 virus.

5. The [C]laimant was directed to work in another area of the workplace.

6. The [C]laimant left work [12] minutes into her shift, without notifying the [E]mployer.

7. The [C]laimant did not inform the [E]mployer that she was leaving or why she was leaving work.

8. The [C]laimant did not inform the [E]mployer if she intended to return to work or when she might return to work.

9. The [E]mployer discharged the [C]laimant for abandoning her job.

(Referee's Decision, Findings of Fact (FOF) ¶¶ 1-9.)

The Referee explained that "[t]he parties agree[d] that the [C]laimant was directed to work in a different location and that she immediately left the worksite before the end of her shift [] without notice to the [E]mployer." (Referee's Decision at 3.) However, Claimant failed to communicate with Employer as to her intention to return to work or when she would return to work. Based on "the undisputed evidence show[ing] that the [C]laimant walked off her job with no notice to the [E]mployer," the Referee found Claimant's behavior fell below the standard an employer would reasonably expect from an employee. (*Id.*) For these reasons, the Referee found Claimant to be ineligible for benefits under Section 402(e). (*Id.*)

### C. Board's Order

Claimant appealed to the Board, arguing that she was not ineligible under Section 402(e) because Claimant's actions were reasonable under the circumstances.

6

The Board issued an Order that affirmed, adopted, and incorporated the Referee's findings and conclusions. After considering the entire record, the Board held that the Referee's Decision was proper under the Law. Claimant filed a Petition for Review of the Board's Order on November 4, 2020.[5]

## II. DISCUSSION

### A. *Parties' Arguments*

Claimant argues on appeal that "this separation occurred during the worst global pandemic in the past 100 years," that Employer's demands upon Claimant were unreasonable, and that Claimant's refusal to comply was reasonable. (Claimant's Brief (Br.) at 19.) Claimant contends that Employer's request was unreasonable because Employer transferred Claimant to a unit with allegedly active cases of COVID-19 and did not provide PPE. Claimant posits that, even if the request was reasonable, her refusal was reasonable based on Daughter's medical condition, which was communicated to Employer "at least on April 2, 2020, a day before the separation occurred," or possibly earlier, and the lack of PPE. (*Id.* at 20.) For these reasons, Claimant asserts she had no choice but to leave her April 3, 2020 shift and, as such, did not engage in disqualifying willful misconduct. Alternatively, Claimant argues that if Section 402(b) is considered, she is not ineligible because these reasons gave her a necessitous and compelling reason for leaving work.

Employer, which has intervened,[6] argues that Claimant committed willful misconduct pursuant to Section 402(e) through job abandonment by refusing to

---

[5] This Court's review in a UC "case is limited to a determination of whether constitutional rights were violated, errors of law were committed, or" essential findings of fact were not supported by substantial evidence. *Lee Hosp. v. Unemployment Comp. Bd. of Rev.*, 637 A.2d 695, 697 (Pa. Cmwlth. 1994).

[6] The Board did not file a brief in this case. (*See* Board Letter to the Court, Sept. 1, 2021).

report to her work location, failing to communicate with Employer by not meeting with Assistant Director to discuss that refusal, not providing notice that she was leaving, and not making Employer aware of Claimant's concerns prior to leaving. All of this, Employer asserts, left it short staffed and "was an obvious disregard of the standards of behavior . . . [Employer] expects of its employees." (Employer's Br. at 7-8.) Further, Employer argues the findings of fact and credibility determinations are supported by substantial evidence, and, because Claimant did not demonstrate good cause for leaving, there was no error in finding Claimant ineligible for benefits under Section 402(e). As to Claimant's alternative arguments regarding Section 402(b), Employer asserts that these arguments are waived because they were not raised on appeal to the Board or in Claimant's Petition for Review.

*B. Legal Standards*

Section 402(e) of the Law provides in pertinent part, "[a]n employe shall be ineligible for compensation for any week [i]n which . . . [her] unemployment is due to [her] discharge or temporary suspension from work for willful misconduct connected with [her] work . . . ." 43 P.S. § 802(e). The term "willful misconduct" is not defined by statute; however, willful misconduct, in the context of UC, means:

> (a) wanton or willful disregard for an employer's interests; (b) deliberate violation of an employer's rules; (c) disregard for standards of behavior which an employer can rightfully expect of an employee; or (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Grieb v. Unemployment Comp. Bd. of Rev.*, 827 A.2d 422, 425, (Pa. 2003) (quoting *Navickas v. Unemployment Comp. Rev. Bd.*, 787 A.2d 284, 288 (Pa. 2001)). The question of whether a claimant's "actions constitute willful misconduct is a question of law, subject to [judicial] review." *McLean v. Unemployment Comp. Bd. of Rev.*,

8

383 A.2d 533, 535 (Pa. 1978). The employer has the burden of proving willful misconduct. *Id.*

Leaving work early without giving an employer notice "is a form of absenteeism which may rise to the level of willful misconduct." *Thompson v. Unemployment Comp. Bd. of Rev.*, 381 A.2d 1024, 1026 (Pa. Cmwlth. 1978). This is because such action constitutes "a breach of duty owed to [the] employer and [i]s an act so inimical to the employer's best interests that discharge [i]s a natural result." *Id.* (quoting *Blystone v. Unemployment Comp. Bd. of Rev.*, 342 A.2d 772, 773 (Pa. Cmwlth. 1975)). Similarly, even in the absence of a rule against specific conduct, a claimant commits willful misconduct "where the standard of behavior is obvious and the [claimant's] conduct is so inimical to the employer's interests that discharge is a natural result." *Orend v. Unemployment Comp. Bd. of Rev.*, 821 A.2d 659, 663 (Pa. Cmwlth. 2003) (citing *Biggs v. Unemployment Comp. Bd. of Rev.*, 443 A.2d 1204 (Pa. Cmwlth. 1982)). An employer can meet its burden by showing that the claimant was or should have been conscious that his or her actions were inimical to employer's interests. *Blaney v. Unemployment Comp. Bd. of Rev.*, 427 A.2d 1242, 1244 (Pa. Cmwlth. 1981). A claimant's "refusal, without good cause, to follow an employer's reasonable directive may also constitute willful misconduct." *Gordon Terminal Serv. Co. v. Unemployment Comp. Bd. of Rev.*, 211 A.3d 893, 898 (Pa. Cmwlth. 2019) (citing *Bailey v. Unemployment Comp. Bd. of Rev.*, 457 A.2d 147, 149 (Pa. Cmwlth. 1983)). If an employer meets its burden of proving willful misconduct, the burden shifts to the claimant to show good cause for his or her actions. *McKeesport Hosp. v. Unemployment Comp. Bd. of Rev.*, 625 A.2d 112, 114 (Pa. Cmwlth. 1993). "A claimant has good cause if his or her actions are justifiable

9

and reasonable under the circumstances." *Docherty v. Unemployment Comp. Bd. of Rev.*, 898 A.2d 1205, 1208-09 (Pa. Cmwlth. 2006).

In reviewing Board decisions, "[t]he Board's findings are conclusive on appeal so long as the record, when viewed in its entirety, contains substantial evidence to support the findings." *W. & S. Life Ins. Co. v. Unemployment Comp. Bd. of Rev.*, 913 A.2d 331, 334 n.2 (Pa. Cmwlth. 2006). Substantial evidence is defined as "relevant evidence upon which a reasonable mind could base a conclusion." *Johnson v. Unemployment Comp. Bd. of Rev.*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). The Board is the ultimate factfinder and is empowered to make its own determinations as to evidentiary weight and the resolution of conflicting evidence. *Constantini v. Unemployment Comp. Bd. of Rev.*, 173 A.3d 838, 843 (Pa. Cmwlth. 2017). "[T]his Court is bound 'to examine the [evidence] in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn'" therefrom. *U.S. Banknote Co. v. Unemployment Comp. Bd. of Rev.*, 575 A.2d 673, 674 (Pa. Cmwlth. 1990) (quoting *Taylor v. Unemployment Comp. Bd. of Rev.*, 378 A.2d 829, 831 (Pa. 1977)). That there may be record evidence "that could support a contrary conclusion" does not mean "that the findings of fact are not supported by substantial evidence." *Constantini*, 173 A.3d at 842-43 (citing *Johnson v. Unemployment Comp. Bd. of Rev.*, 504 A.2d 989, 990 (Pa. Cmwlth. 1986)).

*C. Analysis*

Initially, we note that Claimant does not specifically challenge any of the findings of fact as not being supported by substantial evidence. Instead, Claimant makes general assertions as to why she had good cause not to report to Tower 7 and to leave work on April 3, 2020. Because Claimant has not specifically challenged

any of the findings of fact, they are conclusive on appeal. *Hessou v. Unemployment Comp. Bd. of Rev.*, 942 A.2d 194, 198 (Pa. Cmwlth. 2008). However, to the extent Claimant's arguments could be viewed as challenging the finding that she "did not inform the [E]mployer that she was leaving or why she was leaving work," (FOF ¶ 7), our review of the record reveals that this finding is supported by the credited evidence. Claimant testified that she did not notify anyone that she was leaving. When asked "did you notify any[one] that you were leaving," Claimant responded "[n]o, I didn't," and that "if they don't need me, I'm going to go. So, I punch[ed] out and I left."[7] (C.R. at 88.) Further, Assistant Director testified that although she offered to meet with Claimant to discuss Claimant's refusal to work in Tower 7, Claimant left before doing so. (*Id.* at 87-88, 90-92.) Thus, the finding that Claimant "did not inform the [E]mployer that she was leaving or why she was leaving work" is supported by the record, viewed in its entirety, which includes both Claimant and Employer's testimony on this point. (FOF ¶ 7.) We now turn to the questions of whether Claimant's actions constituted willful misconduct and whether she had good cause for those actions.

Employer bore the initial burden of proving willful misconduct. Here, credited evidence shows that Claimant refused to comply with Employer's directive that she report to Tower 7, and that she left work 12 minutes into her shift on April 3, 2020, without notifying Employer or communicating to Employer why she was leaving in an attempt to alleviate her concerns. This evinces not only the refusal of a directive but also an intentional disregard of Employer's interests and Claimant's

---

[7] Claimant states in her brief that "[i]n the instant case, the employee put her employer on notice that she cannot be transferred into a COVID[-19] ward, because of her daughter's exquisite sensitivity to COVID-19. She articulated this to her employer **at least on April 2, 2020, a day before the separation occurred, and possibly earlier**." (Claimant's Br. at 20 (emphasis added).)

11

duties or obligations as an employee. As a CNA, Claimant should have been conscious that leaving Employer understaffed would be inimical to Employer's interests. *Blaney*, 427 A.2d at 1244.

Claimant claims that Employer's request was unreasonable because Tower 7 had active COVID-19 patients. However, there is no credited testimony of active COVID-19 cases in Tower 7, and Claimant herself testified that she had never been told that there were active cases in Tower 7. (C.R. at 80.) The Referee's finding that "[C]laimant did not want to be transferred to a new work area because she heard **rumors** that some patients may have the COVID-19 virus," (FOF ¶ 4 (emphasis added)), is supported by the record, and thus conclusive on appeal. *W. & S. Life Ins. Co.*, 913 A.2d at 334 n.2; *Johnson*, 502 A.2d at 740. At its core, Employer's request was for Claimant to work at another location due to staffing needs, and, based on the credited testimony, this request was not unreasonable. As such, Employer met its initial burden of proving willful misconduct through Claimant's refusal to comply with a reasonable directive and through Claimant's leaving without notifying Employer and without advising Employer why she was leaving. Ultimately, in leaving her shift without providing notice before she left or communicating to Employer why she was leaving on the morning of April 3, 2020, Claimant breached her duty to Employer and her behavior was inimical to Employer's interests; thus, discharge was a natural result. *Orend*, 821 A.2d at 663; *Thompson*, 381 A.2d at 1026.

Because Employer met its burden of proof, the burden shifted to Claimant to show good cause for her actions. To show good cause, Claimant's actions must be "justifiable and reasonable under the circumstances." *Docherty*, 898 A.2d at 1208-09. We recognize that the COVID-19 Pandemic has produced unique and

tumultuous circumstances in the workplace. Claimant asserts her actions were reasonable because of the alleged lack of PPE and her concern for Daughter's health. However, the Board found that Claimant **did not advise** Employer **that she was leaving** or **why she was leaving**. (FOF ¶ 7.) While Claimant's concerns, if founded, could be reasonable, because Claimant did not provide notice or communicate to Employer her reasons for leaving at the time she left, Claimant did not give Employer the opportunity to either provide PPE to Claimant, or otherwise address her concerns with suspected COVID-19 cases or Daughter's medical condition. Under these circumstances, Claimant's actions on April 3, 2020, cannot be considered justifiable and reasonable. *Id.*

## III.  CONCLUSION

For the foregoing reasons, given the credited testimony, we conclude that Employer met its burden of demonstrating that Claimant was discharged for willful misconduct and that Claimant did not establish good cause for her actions. Therefore, the Board did not err in finding Claimant ineligible for UC benefits pursuant to Section 402(e) of the Law. Accordingly, we affirm the Board's Order.[8]

_____
**RENÉE COHN JUBELIRER,** Judge

---

[8] Based on our disposition, we do not address the parties' Section 402(b) arguments.

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Johanna B. Altamirano,          :
               Petitioner     :
                          :
           v.            :     No. 1108 C.D. 2020
                          :
Unemployment Compensation   :
Board of Review,             :
               Respondent   :

# O R D E R

**NOW**, May 4, 2022, the October 5, 2020 Order of the Unemployment Compensation Board of Review is hereby **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** Judge